UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

EDWARD F. GRODEN, as Executive Director )
of the New England Teamsters and )
Trucking Industry Pension Fund, )
)
                Plaintiff, )           CIVIL ACTION
        v. )           NO.  16-10378-MLW
)
REICHERT & SON TRUCKING, INC., et al., )
)
                Defendants. )

# REPORT AND RECOMMENDATION ON
# PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

February 12, 2018

DEIN, U.S.M.J.

## I.  INTRODUCTION

This is an action under the Employee Retirement Income Security Act of 1974 ("ERISA"),

29 U.S.C. §§ 1001 et seq., as amended by the Multiemployer Pension Plan Amendments Act of

1980 ("MPPAA"), 29 U.S.C. §§ 1381 et seq.  The MPPAA requires employers withdrawing from a

multiemployer pension plan to pay a withdrawal fee equal to their proportionate share of the

pension fund's vested but unfunded benefits.  The defendant Reichert & Son Trucking, Inc.

("Reichert Trucking") was a participant in such a plan, the New England Teamsters and Trucking

Industry Pension Fund (the "Fund" or "Pension Fund").  Reichert Trucking withdrew from the

Fund in 2012 without satisfying its withdrawal liability, and ceased doing business in 2014.  The

plaintiff, Edward F. Groden, is the Executive Director of the Fund.  The Fund brought this action

against Reichert Trucking seeking to recover its withdrawal liability.  (Compl. (Docket No. 1) Count I).

The stock of Reichert Trucking was owned 100% by Donna Reichert.  Her husband, William Reichert, owns 100% of the stock of the defendant, Reichert & Son Fuel Oil, Inc. ("Reichert Fuel").  By this action, the Fund is also seeking to hold Reichert Fuel liable for Reichert Trucking's withdrawal liability under a theory of common control as defined by ERISA § 4001(b)(1), 29 U.S.C. § 1301(b)(1) and relevant regulations.  (Compl. Count II).

This matter is presently before the court on "Plaintiff's Motion for Summary Judgment" (Docket No. 32) whereby the Fund is seeking judgment against both defendants for the withdrawal liability of Reichert Trucking.  In response to the motion, the defendants agree that judgment should enter against Reichert Trucking.  However, they argue that there is no common control between the companies or, in the alternative, that there are material facts in dispute that preclude summary judgment on the issue of Reichert Fuel's liability.

After a careful review of the record and oral argument of counsel, this court finds that the material facts are not in dispute, and that Reichert Fuel is liable for Reichert Trucking's withdrawal liability under a theory of common control.  Therefore, this court recommends to the District Judge to whom this case is assigned that the Fund's motion for summary judgment be ALLOWED.  This court further recommends that the Fund provide an updated calculation of the amount due, and that judgment be entered against all named defendants, which includes aliases used by, or authorized to be used by, Reichert Fuel.[1]

---

[1] Reichert Fuel also does business under the names of Reichert Oil, Reichert & Sons Oil Company, and Reichert & Sons.  (PF ¶ 34; Answer (Docket No. 12) ¶ 6).  Reichert Fuel has also registered with the Office of the Secretary of State for the State of Rhode Island under the fictitious names of East Putnam

## II.  <u>STATEMENT OF FACTS</u>[2]

The following facts are undisputed unless otherwise indicated.

### <u>Overview of the Fund</u>

Plaintiff Edward F. Groden is the Executive Director of the Pension Fund and a "fiduciary" within the meaning of ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).  (PF ¶ 1).  The Fund was established in 1958 pursuant to an Agreement and Declaration of Trust (the "Trust Agreement").  (Id. ¶ 4).  It is a "multi-employer [pension] plan" within the meaning of ERISA § 3(37)(A), 29 U.S.C. § 1002(37)(A), and an "employee benefit plan" or "plan" within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3).  (Id. ¶ 2).  The purpose of the Fund is to receive pension contributions from contributing employers, and to then provide pension benefits to eligible employees of those employers.  (Id. ¶ 4).  Contributing employers are obligated to make contributions to the Fund on behalf of their employees pursuant to collective bargaining agreements ("CBA") between the employer and local Teamster union.  (Id. ¶ 5).  Contributions are based on the hours worked by each employee covered by the CBA, as reflected in monthly

---

Oil, Cheap Heat Oil Brokers, Chepachet Oil Co., Home Heating Oil Services of Pascoag and Suroil Co.  (PF ¶ 35).

[2]  Unless otherwise stated, the facts are derived from: (1) Plaintiff's Statement of Undisputed Material Facts ("PF") (Docket No. 34); (2) Defendants' Response to Plaintiff's Facts ("DR") and Defendants' Statement of Additional Facts ("DF") included in Defendants' Response to Plaintiff's Statement of Undisputed Material Facts and Statement of Additional Facts (Docket No. 40-1); (3) the affidavit of Edward F. Groden ("Groden Aff.") (Docket No. 35) and the exhibits thereto ("Groden Aff. Ex. __"); (4) the affidavit of Catherine M. Campbell ("Campbell Aff.") (Docket No. 36) and the exhibits thereto ("Campbell Aff. Ex. __"); (5) the supplemental affidavit of Catherine M. Campbell ("Campbell Supp. Aff.") (Docket No. 43-1) and the exhibits thereto ("Campbell Supp. Aff. Ex. __"); (6) the affidavit of William Reichert ("W. Reichert Aff.") (Docket No. 40-2); (7) the deposition transcript of William Reichert ("W. Reichert Dep.") (excerpts found in Campell Aff. Ex. 3 at Docket No. 36-3 & Campbell Supp. Aff. Ex. B at Docket No. 43-3); and (8) the deposition transcript of Donna Reichert ("D. Reichert Dep.") (excerpts found in Campbell Aff. Ex. 2 at Docket No. 36-2 & Campbell Supp. Aff. Ex. B at Docket No. 43-2).

remittance reports submitted by the employer.  (Id. ¶¶ 6-7).  These contributions, in turn, determine the amount of benefits to which employees/participants may be entitled.

Congress amended ERISA and enacted the MPPAA in 1980 "to protect the viability of defined pension benefit plans, to create a disincentive for employers to withdraw from multiemployer plans, and also to provide a means of recouping a fund's unfunded liabilities." Sun Capital Partners III, LP v. New England Teamsters & Trucking Indus. Pension Fund, 724 F.3d 129, 138 (1st Cir. 2013) (citing Pension Benefit Guar. Corp. v. R.A. Gray & Co., 467 U.S. 717, 720-22, 104 S. Ct. 2709, 2713-15, 81 L. Ed. 2d 601 (1984)).  "As such, the MPPAA requires employers withdrawing from a multiemployer plan to pay their proportionate share of the pension fund's vested but unfunded benefits." Id. (citing 29 U.S.C. §§ 1381, 1391), and cases cited.  "An employer withdraws when it permanently ceases its obligation to contribute or permanently ceases covered operations under the plan." Id. (citing 29 U.S.C. § 1383(a)).  If an employer challenges a pension fund's calculation of withdrawal liability, it must file a timely request for arbitration under ERISA § 4221, 29 U.S.C. § 1401.  If an employer fails to pay its withdrawal liability, the fund is also entitled to collect interest, liquidated damages, and costs and reasonable attorneys' fees.  (See Groden Aff. ¶ 33).

### Reichert Trucking's Participation in the Pension Fund

Defendant Reichert Trucking was organized as a Rhode Island corporation in 2005.  (DF ¶ 17).  It was in the business of renting trucks and it owned two dump trucks.  (D. Reichert Dep. (Docket No. 36-2) at 22).  Donna Reichert was the owner of 100% of the stock in that company. (See DF ¶¶ 18-19).  As detailed below, however, it is undisputed that William Reichert was

officially an employee of Reichert Trucking, and was actively involved in, if not primarily

responsible for, the management and operation of the trucking company's business.

In October 2005, William Reichert made the decision for Reichert Trucking to enter into

a CBA with Teamster Local 251 (the "Union"), a participating union in the Pension Fund.  (PF

¶ 12; W. Reichert Aff. ¶ 8).[3]  From October 2005 through January 2012, Reichert Trucking made

contributions to the Pension Fund for hours worked by the trucking company's three

employees who were covered by the CBAs, specifically William Reichert, the Reicherts' son, and

a third employee.  (PF ¶ 13; W. Reichert Dep. (Docket No. 36-3) at 46-47).  William Reichert

prepared the remittance reports with respect to the hours worked by these employees.  (PF

¶ 15).  Based upon the contributions paid and hours worked by the employees, all three of

Reichert Trucking's employees have earned "pension credits" and two of the three employees

are vested and eligible for a pension benefit from the Fund.  (Groden Aff. ¶ 22).

Reichert Trucking "permanently ceased to have an obligation to contribute to the

Pension Fund or permanently ceased covered operations under the Pension Fund as of

February 1, 2012."  (PF ¶ 18).  The company ceased operations in 2014.  (DF ¶ 31).  The Pension

Fund notified Reichert Trucking that it had withdrawn from the Fund and demanded payment

of its proportionate share of the Fund's unfunded vested benefit liability ($252,115.00) by letter

dated May 21, 2015.  (PF ¶¶ 19-22).  Receiving no response to the demand for payment, or, in

the alternative, a payment plan, the Fund sent Reichert Trucking a notice entitled "Failure to

---

[3]  William Reichert seems to contend that he was not fully informed about the consequences of
becoming a union company, especially with respect to withdrawing from the Pension Fund.  (See W.
Reichert Aff. ¶¶ 8-9).  However, the defendants do not contend that the plaintiff Fund made any
misrepresentations, nor do they seek to defend this action based on any alleged misrepresentations by
the Union.

Pay Withdrawal Liability" on October 15, 2015, followed by a "Notice of Default" dated November 3, 2015. (Id. ¶¶ 23-26). Reichert Trucking made no payments, took no steps to challenge the demand for withdrawal liability and did not request arbitration. (Id. ¶¶ 29-30). In response to the present motion for summary judgment, the defendants have taken the position that they "do not dispute that judgment should enter against the defendant[] Trucking Company for the withdrawal liability pursuant to 29 U.S.C. § 1399(B)(1)." (Defs. Mem. (Docket No. 40) at 1). Thus, the sole issue before the court is whether Reichert Fuel is also liable.

Donna's husband, William, owns 100% of the stock in Reichert Fuel. (DF ¶¶ 4-5). Organized as a Rhode Island corporation in 1989, Reichert Fuel is in the business of delivering heating fuel and servicing heating systems. (Id. ¶¶ 6-7). It is operated out of the same location as Reichert Trucking — the Reicherts' home. (W. Reichert Dep. (Docket No. 36-3) at 11).

### William's Involvement with Reichert Trucking

William was an employee of Reichert Trucking. (PF ¶ 40; DF ¶ 25). The undisputed facts establish that while William did not own any stock of Reichert Trucking, and was not an official officer or director, he was actively involved in, if not primarily responsible for, the operation of the company. As Donna explained in her deposition, she was the owner and officer of Reichert Trucking but had no other position in the company, and while she oversaw the company she was not "as hands on," instead giving a variety of responsibilities to William. (See D. Reichert Dep. (Docket No. 36-2) at 19-20). Thus, when a truck or driver was needed, William was the one who was called. (Id.).

It was William's idea for Reichert Trucking to sign the collective bargaining agreement with Local 251. (W. Reichert Dep. (Docket No. 43-3) at 26-27, 29-30). William was Reichert

Trucking's main contact with the Union.  (See id. at 34-35).  He determined what work would be done to account for the weekly hours remitted to the Fund on behalf of Reichert Trucking, and he prepared the remittance reports to be submitted to the Fund in return for union benefits. (PF ¶ 15; W. Reichert Dep. (Docket No. 36-3) at 37-38, 42).  As noted above, William, the Reicherts' son, and a third employee were the ones who participated in the Pension Fund.  (W. Reichert Dep. (Docket No. 36-3) at 46-47).  On occasion, William signed some checks in Donna's name on behalf of Reichert Trucking.  (Id. at 42-43).  Finally, when Reichert Trucking's business was slow, William used Reichert Fuel funds to pay Reichert Trucking's benefit obligations to the Fund.  (W. Reichert Dep. (Docket No. 43-3) at 32).

### Donna's Involvement With Reichert Fuel

As noted above, the stock of Reichert Fuel is owned 100% by William.  (PF ¶ 38).  In his affidavit, William asserts that "Donna Reichert never had any managerial or supervising responsibilities at Reichert & Son Fuel Oil, Inc.  She also never had any discretion or control over the operations or employees of that company."  (W. Reichert Aff. ¶ 4).  Despite these conclusory assertions, the undisputed facts establish that Donna was an active employee of Reichert Fuel.  Donna has been employed as a bookkeeper for Reichert Fuel for approximately 25 years.  (Id.; D. Reichert Dep. (Docket No. 36-2) at 15, 16).  Her job responsibilities include keeping track of delivery trucks' mileage and fuel, scheduling service calls, scheduling calls for the drivers, sending bills to customers, and answering the phone.  (W. Reichert Aff. ¶ 4; D. Reichert Dep. (Docket No. 43-2) at 15-17).  In her words "I – pretty much do whatever is needed to do if you're in the office.  It's a multi-task office so if somebody wants to know about

contracts, you explain contracts.  If they want to have their boiler serviced, you schedule a service call for them."  (D. Reichert Dep. (Docket No. 36-2) at 16).

William has also attested that Donna has "never been an officer or served on the Board of Directors" of Reichert Fuel.  (W. Reichert Aff. ¶ 4).  However, the record also includes a letter dated September 16, 2004 to the Rhode Island Secretary of State that reads as follows:

> The undersigned officers of Reichert & Son Fuel Oil, Inc. by this letter give their assent, approval and permission to Reichert & Son Trucking, Inc. to use the name Reichert & Son Trucking, Inc. for the name of the new corporation.
>
> Very truly yours,
> Reichert & Son Fuel Oil, Inc.
>
> /s/_____
> William E. Reichert, President
>
> /s/_____
> Donna L. Reichert, Vice President

(Campbell Supp. Aff. Ex. A (Docket No. 43-2) at 7 of 7). Thus, on at least one occasion, the Reicherts have held Donna Reichert out as an officer of Reichert Fuel.

Additional facts will be provided below where appropriate.

### III. <u>ANALYSIS</u>

#### A.     <u>Summary Judgment Standard of Review</u>

"The role of summary judgment is 'to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  <u>PC Interiors, Ltd. v. J. Tucci Constr. Co.</u>, 794 F. Supp. 2d 274, 275 (D. Mass. 2011) (quoting <u>Mesnick v. Gen. Elec. Co.</u>, 950 F.2d 816, 822 (1st Cir. 1991)) (additional citation omitted).  The burden is upon the moving party to show, based upon the discovery and disclosure materials on file, and any affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'" Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)). "A fact is 'material' only if it possesses the capacity to sway the outcome of the litigation under the applicable law." Id. (quotations, punctuation and citations omitted).

"Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue." PC Interiors, Ltd., 794 F. Supp. 2d at 275 (citation omitted). The opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts. LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841-42 (1st Cir. 1993). Accordingly, "the nonmoving party 'may not rest upon mere allegation or denials of his pleading[,]'" but must set forth specific facts showing that there is a genuine issue for trial. Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986)).

Applying these principles to the instant case compels the conclusion that the plaintiff's motion for summary judgment should be allowed.

**B.      Common Control – The Spousal Attribution Rule**

"Under MPPAA, all trades or businesses under 'common control' – meaning those businesses that share significant ownership by the same people – are treated as constituting a single employer for purposes of determining withdrawal liability." Cent. States, Se. & Sw. Areas Pension Fund v. Johnson, 991 F.2d 387, 388 (7th Cir. 1993) (citing 29 U.S.C. § 1301(b)(1)).[4]

---

[4] It is undisputed that both Reichert Trucking and Reichert Fuel are "trades or businesses" for purposes of this analysis.

[9]

"Thus, if one company incurs withdrawal liability, any other related company in the same 'controlled group' assumes joint and several liability for its obligation."  Id.  "The main purpose of this rule is to prevent a business subject to an unfulfilled pension debt from 'fractionalizing its operations' or shifting assets to related companies to avoid meeting its financial obligations to the plan."  Id.  "To define the scope of a controlled group, MPPAA looks to certain regulations issued by the Secretary of the Treasury."  Id.

One of those treasury regulations is the spousal attribution regulation, 26 C.F.R. § 1.414(c)-4(b)(5).  This regulation provides that "an individual shall be considered to own an interest owned, directly or indirectly, by or for his or her spouse . . . ."  Id.  As the Seventh Circuit explained in Central States:

> The spousal attribution rule counts both spouses as one person to determine whether multiple businesses share the same owner.  For example, if the husband owns 100% of business *A* and the wife owns 100% of business *B*, the regulation attributes the wife's ownership interest in *B* to her husband.  Then business *A* and business *B* are considered owned by the same person, and hence part of the same controlled group.  (The effect is the same if the husband's ownership of business A is attributed to the wife.)  The purpose of the regulation is to prevent a couple from shifting marital property between the two spouses in order to defeat controlled group liability.

Cent. States, 991 F.2d at 389 (citation omitted).  It is undisputed that in the instant matter, Donna and William Reichert are married, Donna Reichert owns 100% of Reichert Trucking, and William Reichert owns 100% of Reichert Fuel.  The Fund argues that, as such, both Reichert companies are within the same controlled group, and the companies must be held jointly and severally liable for Reichert Trucking's withdrawal liability.  In response, the defendants argue that while the spousal attribution rule is applicable to the Reicherts' companies, an exception applies.  For the reasons detailed below, this argument is not persuasive.

[10]

C.      **The Exception to the Spousal Attribution Rule**

The exception to the spousal attribution rule provides:

> An individual shall not be considered to own an interest in an organization owned, directly or indirectly, by or for his or her spouse on any day of a taxable year of such organization, provided that each of the following conditions are satisfied with respect to such taxable year:
>
> (A)    Such individual does not, at any time during such taxable year, own directly any interest in such organization;
>
> (B)    *Such individual is not a member of the board of directors, a fiduciary, or an employee of such organization and does not participate in the management of such organization at any time during such taxable year;*
>
> (C)    Not more than 50 percent of such organization's gross income for such taxable year was derived from royalties, rents, dividends, interest, and annuities; and
>
> (D)    Such interest in such organization is not, at any time during such taxable year, subject to conditions which substantially restrict or limit the spouse's right to dispose of such interest and which run in favor of the individual or the individual's children who have not attained the age of 21 years....

26 C.F.R. § 1.414(c)-4(b)(5)(ii) (emphasis added).  The parties agree that defendants satisfy the conditions set forth in sections A, C, and D but dispute whether defendants satisfy those set forth in section B.

### Which Spouse's Role Controls?

As an initial matter, the defendants argue that in order to determine whether the two companies are under "common control" "the focus should be whether Fuel Company is under common control with Trucking Company (the obligated company) and not vice versa.  Donna's involvement in Fuel Company must be addressed in making this determination and not William's involvement in Trucking Company."  (Defs. Mem. at 4).  The Reicherts cite no support for this proposition, and none can be found.  This argument "runs contrary to the plain terms of

26 C.F.R. §§ 1.414(c)-2 and -4, which contain no such limitations on who may serve as the common controller." Hancock. v. Koz Trucking & Sons, Inc., No. 13CV790, 2015 WL 996821, at *3 (N.D. Ill. Mar. 3, 2015).  It is also inconsistent with case law, which permits courts to focus the spousal attribution exception analysis on the role of the owner of the non-withdrawing company (in this case William).  See id. (finding role of either spouse in the others' company can defeat the application of spousal attribution exception); see also, Bd. of Trs. of Cal. Ironworkers Field Pens. Tr. v. M.M. Stevens, LLC, No. VC-07791 DPP, 2017 WL 4443086, at *3 (C.D. Cal. Oct. 4, 2017) (where husband owned withdrawing company and wife owned second company, court analyzed wife's role in withdrawing company to determine that spousal attribution exception did not apply (appeal pending)).

It makes sense that the spousal attribution exception analysis be applied to either spouse.  As noted above, the entire purpose of the spousal attribution regulation "is to prevent a couple from shifting marital property between the two spouses in order to defeat controlled group liability."  Centr. States, 991 F.2d at 389.  If the role of the spouse/owner of the non-withdrawing entity is never at issue, it would be very easy for a couple to defeat their liability to the pension funds by placing all of the union work in the business of the spouse who is not actively involved in the operations of the company.  Moreover, in the instant case it is not "unfair or unreasonably burdensome" to require William to pay attention to Reichert Trucking's pension obligations given that William was responsible for all the interactions with the Pension Fund and was covered by the Fund.  See id. at 391 (since both spouses own businesses, "[i]t is not unfair or unreasonably burdensome to require each of these spouses to monitor the other's pension-related business affairs, at risk of watching his or her companies be dragged down by

[12]

withdrawal liability should the other's sink first.").  In short, it is appropriate for this court to analyze the spousal attribution exception based on an analysis of William's involvement with Reichert Trucking.

The defendants do not deny that if William's involvement with Reichert Trucking is at issue, the exception does not apply.  The undisputed facts establish that William was an employee of Reichert Trucking and was involved in the management of the company.  For these reasons, William's company, Reichert Fuel, is under common control with Reichert Trucking, and is liable for Reichert Trucking's withdrawal liability.  The Fund's motion for summary judgment should, therefore, be allowed.

### Analysis of Donna's Involvement With Reichert Fuel

The same result would be reached even assuming, arguendo, that the common control analysis should focus on Donna Reichert's involvement with Reichert Fuel, as the defendants contend.  To repeat, for the exception to apply, the record must establish that Donna Reichert "is not a member of the board of directors, a fiduciary, or an employee of [Reichert Fuel] **and** does not participate in the management of [Reichert Fuel.]"  26 C.F.R. § 1.414(c)-4(b)(5)(ii)(B) (emphasis added).  The undisputed facts establish that the exception does not apply.

It is undisputed that Donna is an employee of Reichert Fuel.  In this court's view, this finding, in and of itself, is sufficient to defeat the application of the spousal attribution exception.  See Bd. of Trs. of Cal. Ironworkers Field Pension Tr., 2017 WL 4443086, at *3 ("The spousal attribution exception only applies if, among the other factors, the non-owning spouse is 'not a member of the board of directors, a fiduciary, or an employee of such organization.'

1.414(c)-4(b)(5)(ii)(B)."  Therefore, wife's status as an employee alone defeats the application of the exception.).

Defendants argue that being an employee of Reichert Fuel alone is not sufficient to defeat the exception.  Rather, according to the defendants, the Fund must also establish that Donna Reichert does not participate in the management of Reichert Fuel.  (Defs. Mem. at 6) (Donna meets the exception because "[w]hile she was an employee of the Fuel Company, she never participated in the management of that company.").  The Fund, on the other hand, argues, that "a clear reading and the only sensible reading of the regulation is that there are two conditions under Subsection B that must be satisfied for the exception to apply: the spouse is not an employee **and** the spouse does not participate in management of the other spouse's business.  Here, because Mrs. Reichert **is** an employee in her husband's business, she does not meet 'each' condition of the exception, and *visa versa* with respect to Mr. Reichert."  (Pl. Reply Mem. (Docket No. 43) at 3).  This court agrees that the Fund's interpretation is the more logical reading, and is consistent with the language of the regulation.  This is the interpretation given by the court in <u>Board of Trustees of California Ironworkers</u>, 2017 WL 4443086, at *3, discussed above.  However, there are cases that have found otherwise.  See <u>Hancock</u>, 2015 WL 996821, at *4-5 (exception applies where regardless of whether the individual may have been an employee, "the record requires the finding that he did not participate in the company's management[.]").

In the event that the court must analyze further Donna Reichert's role at Reichert Fuel, the undisputed facts establish that she did "participate in the management of such [company]." As an initial matter, the record establishes that on at least one occasion, the company held her

out to the Rhode Island Secretary of State as being the Vice President of Reichert Fuel.  More-

over, Reichert Fuel was a small company, and Donna Reichert did "whatever [was] needed[.]"

(D. Reichert Dep. (Docket No. 43-2) at 16).  In addition to her role as bookkeeper, her

responsibilities included answering the phones, billing customers, and managing the work flow

of the company, since she was responsible for scheduling service calls and scheduling calls for

the drivers.  (Id. at 17-18).  She was also apparently involved in some hiring decisions.  (See id.

at 16: "In the beginning, I did everything and then **we** hired someone to help out so that

lessened my load. . . ." (emphasis added)).  Thus, even if Donna Reichert's role at Reichert Fuel

is at issue, and being an employee alone is not sufficient to defeat the spousal attribution

exception, the undisputed facts establish that Donna Reichert was an employee who

participated in the management of the company.  The defendants' conclusory denials to the

contrary are insufficient to defeat a motion for summary judgment.  Forestier Fradera v.

Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) ("summary judgment is appropriate if

the non-moving party rests 'merely upon conclusory allegations, improbable inferences, and

unsupported speculation.'" (citation omitted)).  Therefore, the spousal attribution exception

does not apply, and Reichert Fuel is liable for the withdrawal liability of Reichert Trucking.[5]

---

[5]  While the defendants asserted a number of affirmative defenses in their Answer, they have not
argued them in opposition to the motion for summary judgment.  Therefore, they are deemed waived
and will not be addressed herein.  See United Mine Workers of Am. 1974 Pension v. Pittston Co., 984
F.2d 469, 478 (D.C. Cir. 1993) ("As a general rule, ... the failure to raise an affirmative defense in
opposition to a motion for summary judgment constitutes an abandonment of the defense."); Am. Nat'l
Fire Ins. Co. v. York Cty., 582 F. Supp. 2d 69, 78 n.3 (D. Me. 2008), aff'd sub nom. Am. Nat'l Fire Ins. Co. v.
York Cty., 575 F.3d 112 (1st Cir. 2009) ("a defendant who chooses not to argue a particular affirmative
defense in opposing summary judgment certainly risks the potential that summary judgment may be
granted, thereby preventing them from being able to pursue that defense due to the summary
judgment ruling.").

## IV. <u>CONCLUSION</u>

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that Plaintiff's Motion for Summary Judgment (Docket No. 32) be ALLOWED.[6]  This court further recommends that the Fund provide an updated calculation of the amount due, and that judgment be entered against all the named defendants, including the aliases used by, or authorized to be used by, Reichert Fuel.  (<u>See</u> note 1, <u>supra</u>).

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

---

[6] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review.  <u>See</u> <u>Keating v. Sec'y of Health & Human Servs</u>., 848 F.2d 271, 275 (1st Cir. 1988); <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 604-605 (1st Cir. 1980); <u>United States v. Vega</u>, 678 F.2d 376, 378-79 (1st Cir. 1982); <u>Scott v. Schweiker</u>, 702 F.2d 13, 14 (1st Cir. 1983); <u>see</u> <u>also</u> <u>Thomas v. Arn</u>, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  <u>Accord</u> <u>Phinney v. Wentworth Douglas Hosp.</u>, 199 F.3d 1, 3-4 (1st Cir. 1999); <u>Henley Drilling Co. v. McGee</u>, 36 F.3d 143, 150-51 (1st Cir. 1994); <u>Santiago v. Canon U.S.A., Inc.</u>, 138 F.3d 1, 4 (1st Cir. 1998).